UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY MELLENTHIN, *on behalf of her minor child, K.M.*, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 4:23-CV-1146 RLW |
| MEAD JOHNSON & COMPANY, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion to Remand filed by Plaintiff Tammy Mellenthin ("Plaintiff"). (ECF No. 26). Ms. Mellenthin is proceeding in this matter on behalf of a minor child, K.M. Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively the "Mead Johnson Defendants") oppose the motion. Defendants Susie Mondello and Abbott Laboratories, Inc. ("Abbott") did not file a response to the motion to remand, and the time to do so has expired. For the reasons that follow, Plaintiff's motion to remand is granted.

### I. Background

On February 8, 2022, Sarah Hampton filed suit on her own behalf and on behalf of a minor child, K.M., in the Circuit Court of the City of St. Louis, Missouri, against the Mead Johnson Defendants, Susie Mondello, and Abbott. The Petition alleges Sarah Hampton is the mother of K.M. According to the Petition, K.M. was born prematurely in St. Louis, Missouri, and shortly after her birth, she was fed cow milk-based formulas, including Emfamil and Similac products, which caused her to develop necrotizing enterocolitis ("NEC"). (ECF No. 1, Ex. 1 at 10 and 12).

In the Petition, the Mead Johnson Defendants, which manufacture and market Emfamil products, were alleged to be citizens of Delaware and Illinois. Defendant Abbott, which

manufactures and markets Similac products, was alleged to be a citizen of Illinois. Defendant Susie Mondello was alleged to be a sales representative for the Mead Johnson Defendants and a resident of Missouri. Sara Hampton was alleged to be a resident of Illinois.[1]

The state court issued summons for all four defendants on February 8, 2022. On March 10, 2022, the Mead Johnson Defendants and Abbott filed separate motions for more definite statement or for a bill of particulars. Defendant Mondello filed an answer. (ECF No. 1, Ex. 1 at 55, 65, and 71).

According to the record provided, the state court held status conferences and assigned to case to a trial division, but it was not until July 10, 2023, that the Mead Johnson Defendants served written discovery on Ms. Hampton. (ECF No. 1, Ex. 1 at 173). That same day, the state court set the case for trial on April 18, 2024. (ECF No. 1, Ex. 1 at 176). On July 14, 2023, Abbott served written discovery requests on Ms. Hampton. (ECF No. 1, Ex. 1 at 177). On July 25, 2023, Abbott served a subpoena on BJC Health System requesting the production of medical records and other documents. (ECF No. 1, Ex. 1 at 196-208). Later, Abbott would serve additional subpoenas on other hospitals and providers. On August 9, 2023, Ms. Hampton filed a certificate of service certifying that she responded to the Mead Johnson Defendants' and Abbott's written discovery requests on August 8, 2023. (ECF No. 1, Ex. 1 at 213).

On August 18, 2023, Tammy Mellenthin filed a motion for leave to intervene and to file a First Amended Petition. (ECF No. 1, Ex. 1 at 223). According to the motion, Ms. Hampton's parental rights were terminated on September 26, 2019, and on October 21, 2020, Ms. Mellenthin, K.M.'s biological grandmother, became the adoptive parent of K.M. On August 23, 2023, Ms. Hampton filed a notice of voluntary dismissal without prejudice as to all of her claims against the

---

[1]There are no allegations in the Petition as to the citizenship or residency of K.M.

defendant.  On September 5, 2023, the state court granted Ms. Mellenthin's motion to intervene and for leave to file an amended petition.  (ECF No. 1, Ex. 1 at 335).  In the Amended Petition, which is nearly identical to the Petition in substance, Ms. Mellenthin, who is alleged to be a resident of Illinois, brings claims on behalf of K.M. only.  Ms. Mellenthin does not assert claims on her own behalf.

On September 13, 2023, the Mead Johnson Defendants removed the cause of action to this Court.[2]  In their Notice of Removal, the Mead Johnson Defendants allege this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Complete diversity, however, is lacking on the face of the First Amended Petition, as it was on the face of the initial Petition.  Ms. Mellenthin, K.M., and Defendant Abbott are alleged to be citizens of Illinois.[3]  While the Mead Johnson Defendants are alleged to be citizens of Delaware and Illinois in the Petition and First Amended Petition, the Mead Johnson Defendants aver in their Notice of Removal that they are citizens of Delaware and Indiana, which Ms. Mellenthin does not contest in her Motion to Remand.  Defendant Mondello is alleged to be a citizen of Missouri.

The Mead Johnson Defendants acknowledge diversity of citizenship is lacking on the face of the First Amended Petition but argue Abbott was fraudulently joined to defeat diversity jurisdiction, and Defendant Mondello was joined to prevent proper removal.  The Mead Johnson defendants urge the Court to disregard their citizenships for purposes of determining diversity jurisdiction and whether removal was proper.

---

[2]Abbott and Defendant Mondello did not join in the Notice of Removal.  Abbott filed a Motion for More Definite Statement in response to the First Amended Petition.  (ECF No. 53).  Defendant Mondello answered the initial Petition but has yet to answer or otherwise respond to the First Amended Petition.

[3]Although not specially alleged in the First Amended Petition, it would appear K.M. is also a citizen of Illinois.  The Mead Johnson Defendants allege in the Notice of Removal that K.M. is a citizen of Illinois, and Plaintiff does not dispute this fact.

## *II.  Legal Standard*

### A.       Diversity Jurisdiction

The Mead Johnson Defendants removed on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1).  A federal court has diversity jurisdiction where the matter in controversy exceeds $75,000 and is between citizens of different states.[4]  28 U.S.C. § 1332(a).  For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1) there must be complete diversity of citizenship between plaintiffs and defendants.  Buckley v. Control Data Corp., 923 F.2d 96, 97, n.6 (8th Cir. 1991). "It is settled, of course, that absent complete diversity a case is not removable because the district court would lack original jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 564 (2005) (cited case omitted).

Fraudulent joinder is an exception to the rule that complete diversity of citizenship must exist both when the state petition is filed and when the petition for removal is filed. Knudson v. Sys. Painters, Inc., 634 F.3d 968, 976 (8th Cir. 2011). "[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" Id. (quoted case omitted).  "The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court." Id. (cited source omitted).

"Ordinarily, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, [the Eighth Circuit Court of Appeals has] required a defendant seeking removal to prove that the plaintiff's claim against the diversity-destroying defendant has 'no reasonable basis in fact and law.'" Knudson, 634 F.3d at 977 (quoting Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003)).  Under this standard, "if it is clear under governing state law that the complaint does not

---

[4]There is no dispute that the requisite amount in controversy is met in this case.  See 28 U.S.C. § 1332(a).

4

state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Filla, 336 F.3d at 810 (internal quotation marks omitted). In deciding whether joinder is fraudulent, the court may not step from the threshold jurisdictional issue into a decision on the merits. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 122 (3d Cir. 1990) (reversing district court's order denying remand); see also Filla, 336 F.3d at 811 ("Like the district court, we have no power to decide the merits of a case over which we have no jurisdiction.").

### B.    Removal Procedures

Removal is a statutory right outlined in 28 U.S.C. § 1441 and governed by § 1446. Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 932 (8th Cir. 2012). A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court. See 28 U.S.C. § 1441(a); Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992). Defendants seeking to remove a civil case from state court must file a Notice of Removal, which sets forth the grounds for removal. 28 U.S.C. § 1446(a).

The "forum defendant" rule, codified at 28 U.S.C. § 1441(b)(2), imposes an additional restriction on the removal of diversity cases. The statute provides, "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2).

As for timing, under the statute, the notice of removal "shall be filed within 30 days" from the time the defendant is served with the complaint. 28 U.S.C. § 1446(b)(1). But if the case is not initially removable when filed and it becomes subsequently removable, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the

case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). However, for cases that are removed on the basis of diversity jurisdiction, there is an additional one-year limitation from the date the suit was initially brought. 28 U.S.C. § 1446(c)(1).

Finally, "all defendants must join in a notice of removal or the case will be remanded" pursuant to the rule of unanimity under 28 U.S.C. § 1446(b)(2). Marano Enter. of Kansas v. Z–Teca Rest., L.P., 254 F.3d 753, 755 n. 2 (8th Cir. 2001); see also Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008) ("[T]he failure of one defendant to consent renders the removal defective . . . .").

Where complete subject matter jurisdiction is lacking or the removal was defective, the Court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). The party seeking removal and opposing a motion to remand bears the burden of establishing the removal was proper and federal jurisdiction exists. In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam).

### III.  Discussion

Plaintiff moves to remand on a number of grounds. Plaintiff argues removal was untimely because the Notice of Removal was filed more than a year after the action was commenced in state court. Plaintiff further argues the removal was untimely because the Mead Johnson Defendants filed their Notice of Removal more than 30 days after they received the written discovery from which they purportedly ascertained the case was removable. In addition, Plaintiff maintains the fraudulent joinder doctrine does not apply and diversity of citizenship is lacking because she has stated colorable claims against Abbott. Plaintiff also argues she has stated colorable claims against Defendant Mondello, a forum defendant, which makes removal improper under § 1441(b)(2). Finally, Plaintiff argues removal was improper because Abbott and Defendant Mondello have not consented to the removal. Plaintiff asserts the Court must remand this cause of action to state

court.  Plaintiff also requests the Court award attorneys' fees and costs associated with opposing the removal.

## A.   The Removal Was Not Timely

The Court will first address whether the removal was timely.  Although the Mead Johnson Defendants base their removal on alleged diversity jurisdiction, it is undisputed that the Mead Johnson Defendants filed their Notice of Removal more than one year after the initial Petition was filed in state court.  The language of § 1446(c)(1) provides that "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  The Mead Johnson Defendants argue they are not subject to the one-year limitation because the First Amended Petition was in effect a new lawsuit and, therefore, the one-year limitation did not begin to run until September 2023, when the First Amended Petition was filed.[5]   The Mead Johnson Defendants further argue that bad faith was employed to prevent the removal of this case.

### 1.   Commencement of the action

Ms. Hampton filed the initial Petition in state court on February 8, 2022.  The case was removed on September 16, 2023, more than 19 months later.  It is the Mead Johnson Defendants' theory that, for purposes of § 1446(c)(1), the action did not commence on February 8, 2022, when the initial Petition was filed, but rather the action commenced in September 2023, when Ms. Mellenthin entered the case and filed the First Amended Petition.  The Mead Johnson Defendants point to the fact that under Missouri law, civil suits by minors must be brought by a duly appointed

---

[5] It is not clear from the state court record the exact date the First Amended Petition was filed.  The state court granted leave to file the First Amended Petition on September 5, 2023.  The copy of the First Amended Petition in the Court's record, however, is neither dated nor stamped as having been filed in state court.  (ECF No. 12).

guardian or conservator, or by a next friend appointed in the suit.  Mo. Sup. Ct. R. 52.02; Mo. Rev. Stat. § 507.110.  They argue because Ms. Hampton's parental rights were terminated, she did not have authority to bring suit on K.M.'s behalf and, therefore, she never asserted a claim on the K.M.'s behalf.  Citing to <u>Paul Fire & Marine Insurance Company v. Continental Building Operating Company</u>, 137 F. Supp. 493, 494 (W.D. Mo. 1956), the Mead Johnson Defendants argue the Court should consider the initial Petition null and void and find that the First Amended Petition was in effect a new lawsuit, which started the one-year limitation of § 1446(c)(1).

The Court does not find the Mead Johnson Defendants' argument persuasive.  The Mead Johnson Defendants cite no authority, and the Court has found none, holding an action has not commenced for purposes of § 1446(c)(1), because the representative plaintiff, who was later substituted, did not have authority to bring suit on behalf of a minor or incompetent person. Substitution of representative plaintiffs for minors or incompetent persons is not uncommon in litigation, and the Court is unaware of any authority holding a substitution of a representative plaintiff resets the filing date for a lawsuit.

The one case the Mead Johnson Defendants do cite in support of their argument, <u>Paul Fire & Marine Insurance </u>Company, which is over seventy years old, is inapplicable to the issues at hand.  The case does not address what constitutes commencement of an action for purposes of § 1446(c)(1).  137 F. Supp. at 494.  In fact, the case does not involve removal at all, or even the substitution of representative plaintiffs.  Rather, the case addresses whether an amended complaint, which substitutes a plaintiff with no interest in the suit for a plaintiff with an interest, relates back to the initial complaint for purpose of Missouri's statutes of limitations.  <u>Id.</u>  In the case, the district court held the amended complaint did not relate back to the time of filing of the original action because the original plaintiff had no interest in the litigation whatsoever.

8

In reaching its decision, the court wrote, "the substitution amounted, in legal effect, to the institution of a new action upon the cause of action" – language the Mead Johnson Defendants quote in their brief.[6]  137 F. Supp. at 494.  But in writing that the substitution of plaintiffs essentially amounted to a new cause of action, the court was analyzing Missouri's statutes of limitations and the application of the relation-back doctrine, not the one-year removal deadline found in § 1446(c)(1).  Whether K.M.'s claims are barred by a state statute of limitations as a result of the substitution of the representative plaintiff is not before the Court; the timeliness of removal is.  The Paul Fire & Marine Insurance is inapplicable to the issues at bar.

The Mead Johnson Defendants also fail to address the effect Ms. Hampton's own claims have on their theory that the initial Petition was a legal nullity.[7]  In addition to purporting to bring claims behalf of K.M., Ms. Hampton brought claims on her own behalf.  She alleged in the initial Petition that she suffered significant emotional distress and loss of income as a result of the defendants' unlawful conduct.  Therefore, even if the Court were to find K.M.'s claims in the initial Petition were null and void, because Ms. Hampton did not have the authority under Missouri law to bring those claim, Ms. Hampton brought claims against the defendants on her own behalf.

---

[6]The Paul Fire & Marine Insurance court also wrote the following, "if a suit is brought by one who has no legal right to maintain it, yet, who has a beneficial interest in the subject matter of the action, the substitution of a proper plaintiff will relate back to the time of filing of the original action by the one without authority to prosecute it … ."  Id. at 494.  Setting aside the case was addressing Missouri's statutes of limitations and not the timeliness of removal, arguably the holding in Paul Fire & Marine Insurance supports Plaintiff's position, because Ms. Hampton did have her own interest in this case.  See discussion infra.

[7]In their Memorandum in Opposition to Plaintiff's Motion to Remand, the Mead Johnson Defendants do not ignore the fact Ms. Hampton brought claim on her own behalf.  They do not dispute Ms. Hampton brought her own claims in the initial petition or even that she had standing to do so, but rather they argue her claims did not meet the amount and controversy requirements, and, therefore, the suit was not removable until Ms. Mellenthin, K.M.'s proper guardian, entered on behalf of K.M.  But whether Ms. Hampton's claims met the amount on controversy requirement is irrelevant to whether the initial petition commenced the one-year time limitation for purposes of § 1441(c)(1).

The Court declines to find the entire initial Petition was null and void or that the First Amended Petition was the initial pleading in this case.  Ms. Hampton's and K.M.'s claims were joined in one cause of action, which commenced with the filing of the initial Petition in state court on February 8, 2022.  Arnold Crossroads, L.L.C. v. Gander Mountain Co., No. 4:10-CV-2173 HEA, 2011 WL 2983511, at *2 (E.D. Mo. July 22, 2011) (pursuant to Missouri Supreme Court Rule 53.01, "a civil action is commenced by filing a petition with the court"); Jackson v. C.R. Bard, Inc., No. 4:17-CV-974 CEJ, 2017 WL 2021087, at *3 (E.D. Mo. May 12, 2017) (same).  Ms. Hampton voluntarily dismissed her claims, but K.M.'s claims remain.

In sum, the Court finds the Mead Johnson Defendants' argument that § 1443(c)(1)'s one-year limitation began to run on in September 2023 with the filing of the **First Amended Petition** is without merit.  This action commenced on February 8, 2022, with the filing of the initial Petition.

2.   Bad faith

Finding the Notice of Removal was filed in this case more than one year after the commencement of the action, the Court must grant Plaintiff's Motion to Remand unless the Mead Johnson Defendants can establish there was "bad faith" in order to prevent removal.  28 U.S.C. 1446(c)(1).

The Court of Appeals for the Eighth Circuit has not articulated a standard for the bad-faith exception under § 1446(c)(1), as other judges in this district have noted.  H&B Ventures, LLC v. State Auto Prop. & Cas. Ins. Co., No. 4:23-CV-00438 MTS, 2023 WL 5093851, at *2 (E.D. Mo. Aug. 9, 2023); Jackson, 2017 WL 2021087, at *2.  In the absence of controlling authority, judges in this district and other have applied the test set forth in Aguayo v. AMCO Insurance Company, 59 F. Supp. 3d 1225 (D.N.M. 2014).  See, e.g., SAAC Invs., LLC v. Secura Ins., No. 4:22-CV-01174 NCC, 2023 WL 1070353, at *3 (E.D. Mo. Jan. 27, 2023).  Under Aguayo, a court is to determine whether the plaintiff actively litigated the claims in state court.  Failure to litigate is per

se bad faith.  If the plaintiff actively litigated in state court, the plaintiff is "entitled to a rebuttable presumption of good faith," which the defendant may rebut with direct evidence of bad faith.  Id. at 1275.

Recently, the Honorable Matthew T. Schelp declined to apply the Aguayo test.  H&B Ventures, LLC, 2023 WL 5093851, at *2.  In a well-reasoned opinion, Judge Schelp found the Aguayo test is contrary to the plain language of the statute, has structural flaws, and incentivizes costly and, paradoxically, bad faith litigation tactics.  The Court concurs with the reasoning in H&B Ventures, LLC, and will follow its approach.  Therefore, for § 1446(c)(1) bad faith exception to apply, a defendant must show the plaintiff engaged in conduct with the intent to prevent removal. Id. at *4.  Defendants can prove a plaintiff acted in bad faith to prevent removal "through a variety of factors and circumstances," including the plaintiff's failure to litigate in state court.  2023 WL 5093851, at *2.  Other factors and circumstances may include the following: timing for dismissing a non-diverse defendant, whether there was a viable and consistent explanation for dismissing the non-diverse defendant, whether the plaintiff received consideration for dismissing the non-diverse defendant, the plaintiff's employment of delay tactics in state court, and the plaintiff's knowledge that a claim against the non-diverse defendant was no longer supported by evidence.  2023 WL 5093851, at *2 (citation omitted).  The Court does not believe this is an exhaustive list.

Here, the Mead Johnson Defendants argue Ms. Hampton and Ms. Mellenthin acted in bad faith by naming Abbott, a non-diverse defendant, when there was no evidence to support claims against this defendant. The Mead Johnson Defendants also argue Ms. Hampton and Ms. Mellenthin joined Defendant Mondello, a forum defendant, knowing they could not maintain claims against her.  Additionally, the Mead Johnson Defendants argue Ms. Hampton acted in bad faith to prevent removal by concealing the fact that her parental rights had been terminated.  They also argue Plaintiff's bad faith is evidenced by the plaintiffs'' failure to litigate in state court.

11

The Court is not persuaded that either Ms. Hampton or Ms. Mellenthin joined Abbott, a non-diverse defendant, in bad faith in order to prevent removal.  Both the Petition and First Amended Petition allege Abbott and the Mead Johnson Defendants marketed to the hospital where K.M. was born, and that the hospital used formula products from both Abbott and the Mead Johnson Defendants.  The pleadings further allege that both Abbott and the Mead Johnson marketed their formula products to parents while they are in the hospital to encourage parents to continue to use their products after they leave.  And both the Petition and First Amended Petition allege K.M. was fed products from both companies, which is the allegation the Mead Johnson Defendants argue is false and was made in bad faith.[8]  In support of their argument, the Mead Johnson Defendants claim Ms. Hampton served misleading discovery responses, and they point a "factsheet" in which they argue Ms. Mellenthin admitted K.M. was not fed any Abbott products.

On August 9, 2023, Ms. Hampton responded the Mead Johnson Defendants' written discovery requests, which were served on July 10, 2023.  The Court reviewed Ms. Hampton's responses and does not find that she purposely concealed what products K.M. was fed.  In response to interrogatories regarding what products K.M. was fed at the hospital, the plaintiff referred the defendants to medical records from the hospital.  And, as the Mead Johnson Defendants admit, Ms. Hampton produced a number of hospital records in response to their discovery requests.  The Mead Johnson Defendants argue, however, that not all the records were produced.  Plaintiff responds in her Reply in Support of Plaintiff's Motion to Remand that she produced all the records

---

[8]Abbott filed motions for more definite statement based on the fact that the initial Petition and First Amended Petition fail to identify specifically which Abbott cow milk-based products K.M. was fed.  However, Abbott admits there are allegations that K.M. was fed both Abbott products and Similac products.  See ECF No. 12 at 2 (K.M. "was given Defendants' cow's milk-based infant feeding products.  Defendants' products caused [her] to develop [NEC].")  But Abbott also points to the fact that some of the allegations are not specific and are pleaded in the alternative.  See ECF No. 12 at 4 (K.M. "was fed Similac and/or Enfamil cow's milk-based products from shortly after her birth.").

that were available at the time.  Plaintiff also points to the fact that the medical records from the hospital are ambiguous, as some of the entries in the feeding records do not specify what products were fed to K.M. for some of the feedings.  In defending her written responses, Plaintiff argues additional discovery, such as depositions of medical providers, is needed to determine exactly what products K.M. was fed by providers in the hospital.

As for the factsheet, it appears to be a form questionnaire prepared by one or more the defendants that was completed by Ms. Mellenthin "to the best of [her] recollection and ability at this time."  (ECF No. 29, Ex. 1 at 1).  The form is undated, but Plaintiff states that it provided to the defendants on August 9, 2023.  The form questionnaire asks a number of questions about K.M., her birth, her medical conditions, what formulas K.M. was fed, when she was fed formula and by whom, and whether K.M. was fed breast milk.  The form also asks, among other things, what information or instructions K.M.'s parents were provided about formula products, and whether K.M.'s parents purchased formula products.  When asked to provide the specific formula or fortifier product that caused K.M.'s injuries, Ms. Mellenthin listed two Emfamil products.

As noted above, Ms. Mellenthin is not K.M.'s biological mother, and her responses regarding K.M.'s birth and what K.M. was fed on the hospital would not be based on personal knowledge.[9]  Furthermore, Ms. Mellenthin noted in her written responses that there was a lot of information she did not know.  For example, Ms. Mellenthin did not know whether instructions were given about the products, whether someone other than a healthcare provider administered the products, whether K.M. biological parents purchased formula or fortifier products, or if K.M. was fed breast milk.

---

[9]K.M. was born in 2011, and Ms. Mellenthin would not become K.M. adoptive parent until 2020.

The Court concurs with Plaintiff Mellenthin that the factsheet is a snapshot of what Ms. Mellenthin knew at the time she completed it.  While it may be admissible evidence, it is not definitive proof or a legal admission that K.M. was not fed Abbott products.  It is also not definitive proof that the plaintiffs purposely concealed the fact that K.M. was not fed Abbott products in order to defeat diversity jurisdiction and prevent removal.

The Mead Johnson Defendants have not established that the plaintiffs purposely concealed the fact that K.M. was not fed Abbott products in order to defeat removal.  The Court reviewed the medical records and agrees with the Plaintiff that is not clear what K.M. was fed at every feeding while she was in the hospital.  In the pleadings, there are allegations that Abbott sold formula products to the hospitals where K.M. was born and treated, and Abbott is alleged to have marketed its products to parents in the hospital.  In light of these allegations, which the Mead Johnson Defendants do not dispute, the Court finds it was not unreasonable for the plaintiffs to have alleged K.M. was fed Abbott products.[10]

The Mead Johnson Defendants further argue Defendant Mondello, a forum defendant, was joined in this case to prevent removal.  Defendant Mondello is alleged to be a sales representative, who provided "information about Mead Johnson's products to hospital personnel, including personnel at the hospitals where K.M. was treated and developed NEC."  (ECF No. 12 at 10-11).  The Petition alleges Defendant Mondello mispresented the risks of feeding cow milk-based formulas to infants and more particularly to those, like K.M., who were born prematurely.  The Petition further alleges Defendant Mondello negligently marketed, distributed, and sold Mead

---

[10]The Court also finds it notable that Ms. Hampton did not voluntarily dismiss Abbott after the one-year deadline in §1446(c)(1) had run, and that Ms. Mellenthin continues to assert claims against Abbott on behalf of K.M.  The fact that Abbot remains a defendant in this suit is inapposite to the Mead Johnson Defendants' contention that Abbott was joined for the purpose of defeating diversity jurisdiction and preventing removal.

Johnson products, that she failed to warn of the products' risks, and that she made false statements about the products. Plaintiff brings claims of negligence, negligent misrepresentation, and intentional misrepresentation against Defendant Mondello.[11]

Defendant Mondello answered the Petition and denied the allegations of negligence and misconduct. The Mead Johnson Defendants assert the allegations were "easy to deny" because Defendant Mondello "never called on Barnes Jewish Hospital, where K.M. was born, or St. Louis Children's Hospital, where KM was allegedly diagnosed with NEC. She also does not sell formula." (ECF No. 1 at 3). In support of their assertions, the Mead Johnson Defendants attached the declaration of Defendant Mondello. Plaintiff responds that discovery has shown otherwise and attaches to her Reply in Support of Plaintiff's Motion to Remand excerpts from Defendant Mondello's deposition that support Plaintiff's version of the facts.

The Mead Johnson Defendants essentially are asking the Court to make a determination on the merits of Plaintiff's claims against Defendant Mondello. Moreover, they are not asking the Court to make the determination based on allegations in the pleadings, but rather based on their own version of the facts – facts that Plaintiff disputes. But the Mead Johnson Defendants cite no cases in support of their argument where a court examined the disputed facts of a claim to determine whether a forum defendant was joined in bad faith to preclude removal, and the Court declines the defendants' invitation here. Cf. Dillard v. Silvercote, LLC, No. 4:17-CV-2314 CAS, 2018 WL 2364281, at *4 (E.D. Mo. May 24, 2018) (in fraudulent joinder context, declining to review affidavit and deposition transcript to determine whether plaintiff had stated a claim against non-diverse defendant).

---

[11]As stated earlier, the substantive allegations in the First Amended Petition are nearly identical to the substantive allegations in the Petition, including those concerning Defendant Mondello.

The Mead Johnson Defendants further argue Ms. Hampton acted in bad faith by concealing the fact that her parental rights had been terminated.  The Court is unpersuaded by this argument.  It is unclear how bringing a claim in her own name and on behalf of K.M, despite the fact that she was not the proper representative for K.M., prevented the removal of this case.  Ms. Hampton is a citizen of Illinois, and Ms. Mellenthin is a citizen of Illinois.  Nothing changed as to the citizenship of the parties.  The First Amended Petition substituted K.M.'s representative and dismissed Ms. Hampton's own claims, but the case was no more removable after the filing of the First Amended Petition than before.  Furthermore, the substitution of Ms. Mellenthin for Ms. Hampton occurred approximately six months after the §1446(c)(1) one-year deadline had run.

Finally, the Mead Johnson Defendants argue the plaintiffs acted in bad faith by failing to litigate in state court.  What is more notable, in the Court's view, is the defendants' inaction while the case was pending in state court.  From the beginning when this case was filed, it was apparent there was an issue as to what products K.M. was fed.  In response the initial Petition, Abbott and Mead Johnson both filed motions for more definite statements or for a bill or particulars asking that the state court require Ms. Hampton to provide, among other things, more information about the specific products K.M. was fed.  Abbott and the Mead Johnson Defendants both filed their motions on March 10, 2022, (ECF No. 1, Ex. 1 at 55 and 65), and yet none of the defendants called the motions up for hearing in state court.  The case was transferred to a trial division on February 1, 2023, and the Mead Johnson Defendants took a change of judge.  But still the defendants did not ask for a ruling on their motions for more definite statements or for a bill or particulars.  (ECF. No. 1, Ex. 1 at 134 and 137).

The defendants also delayed taking discovery in state court.  At least six attorneys entered appearances of behalf of the Mead Johnson Defendants and Defendant Mondello in state court, and three more entered appearances of behalf of Abbott.  But despite having a team of lawyers,

the defendants served their first set of written discovery requests in July 2023 – 15 months after the defendants entered the case and 5 months after the limitation in § 1446(c)(1) had run. Moreover, there is nothing in the record to indicate the defendants ever noticed up a deposition. (ECF No. 1, Ex. 1 at 173).  Defendant Abbott subpoenaed records from the hospital, but this was not done until July 25, 2023, again months after the removal deadline had passed.  (ECF No. 1, Ex. 1 at 196).

The evidence Ms. Hampton and Ms. Mellenthin supposedly concealed to prevent removal easily could have been obtained through written discovery requests, depositions, and/or subpoenas, and yet like the defendants in H&B Ventures, LLC, the defendants in this case "[sat] on their hands through the one-year deadline and then (ironically) argue bad faith on the part of the plaintiff for failure to litigate."  2023 WL 5093851 at *5.  The Court declines to find bad faith based on Ms. Hampton's or Ms. Mellenthin's failure conduct discovery, when it appears all the parties in the case failed to take discovery for well over a year.  Id.; see also GeoSierra Env't, Inc. v. Nautilus Ins. Co., Inc., 2:22-CV-00505-TL, 2023 WL 2632515, at *5 (W.D. Wash. Mar. 24, 2023) (declining to find bad faith based on a plaintiff's failure to serve any discovery on the non-diverse defendant where both the plaintiff and diverse-defendant did not take discovery); Somera Cap. Mgmt., LLC v. Twin City Fire Ins. Co., 2:20-CV-4277-DMG, 2020 WL 3497400, at *3 (C.D. Cal. June 29, 2020) (finding lack of discovery did not indicate bad faith where plaintiff elected not to serve discovery on either defendant).

In sum, for the reasons discussed, the Court finds the Mead Johnson Defendants failed to meet their burden of demonstrating that the bad-faith exception under § 1446(c)(1) applies.  The Mead Johnson Defendants filed their Notice of Removal after the one-year deadline had passed. Finding the removal untimely under § 1446(c)(1), the Court need not address other issues raised

in Plaintiff's Motion to Remand, and the case must be remanded to state court pursuant to § 1447(c).

**B.    Attorneys' Fees**

In her Memorandum in Support of her Motion to Remand, Plaintiff requests that the Court award her attorney's fees and costs.  Pursuant to 28 U.S.C. § 1447(c), an order remanding a case may require payment of just costs, including attorneys' fees, in the discretion of the district court. Under the facts of this case, the Court declines to award Plaintiff attorneys' fees.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Tammy Mellenthin's Motion to Remand is **GRANTED.**  [ECF No. 26]

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of the City of St. Louis, Missouri.

An appropriate Order of Remand will accompany this memorandum and order.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this __25th__ day of October, 2023.